UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------

**N.S., as a minor, by and through her parents and next friends, S.S. and C.S.,**

    **Plaintiffs,**

    v.

**DISTRICT OF COLUMBIA,**

    **Defendant.**

Civil Action No. 16-306 (JDB-GMH)

------

## MEMORANDUM OPINION

Plaintiff N.S. and her parents brought this suit against the District of Columbia Public Schools (DCPS) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. Specifically, plaintiffs sought reversal of an administrative hearing officer's February 4, 2016 determination that DCPS did not deny her the "free and appropriate education" (FAPE) required by the IDEA. Id. § 1400(d)(1)(A). This case was referred to Magistrate Judge G. Michael Harvey, who issued a thorough Report and Recommendation (R&R) recommending that the Court affirm the hearing officer's decision, deny plaintiff's motion for summary judgement, and grant defendant's motion for summary judgment. See R&R, Jan. 31, 2017 [ECF No. 26]. Judge Harvey also determined that his R&R was consistent with the Supreme Court's recent decision in Endrew F. ex rel. Joseph F. v. Douglas County School District, 137 S. Ct. 988 (2017). See Order, May 3, 2017 [ECF No. 33]. Plaintiffs have since moved to voluntarily dismiss this case with prejudice under Federal Rule of Civil Procedure 41(a)(2). See Mot. for Dismissal [ECF No. 37]. Defendant opposes the motion. See Def.'s Opp'n to Pls.' Mot. for Voluntary Dismissal ("Def.'s Dismissal Opp'n") [ECF No. 38]. After considering both parties' filings on the matter, the Court will grant plaintiffs' motion, and will dismiss the case with prejudice.

## I. BACKGROUND

### A. Statutory and Regulatory Background

As a recipient of federal funding under the IDEA, the District of Columbia must provide a FAPE to all students who reside in the District and who have disabilities. See 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1). This is typically accomplished through implementing an individualized education program (IEP) at an appropriate school. See Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 368 (1985). An IEP must be developed by a team that includes the student's parents, teachers, and other specialists, and must assess the student's needs, implement strategies to meet those needs, and include goals to measure the IEP's effectiveness. 20 U.S.C. § 1414(d)(1)(A)–(B). The IEP must be revised at least annually to determine whether the student is making progress. Id. § 1414(d)(4)(A). If the public school system cannot meet the student's needs, the student must be placed in a private school at public expense. Id. § 1412(a)(10)(B)–(C).

A parent who believes that her child's IEP is inappropriate may request an administrative hearing, referred to as a "due process hearing," before an independent hearing officer. Id. § 1415(f)(1). After the hearing officer issues a determination ("hearing officer determination" or "HOD"), the parent may seek review of the HOD in the appropriate federal district court. Id. § 1415(i)(2). The party challenging the HOD bears "the burden of persuading the court that the hearing officer was wrong," Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005), by a preponderance of the evidence, 20 U.S.C. § 1415(i)(2)(C). While these review processes are underway, "the child shall remain in [her] then-current educational placement"—thus maintaining the status quo—"unless the State or local educational agency and the parents otherwise agree." Id. § 1415(j). This guarantee is known as the IDEA's "stay-put provision."

## B. Factual Background

Because no party has objected to the R&R's factual findings, the Court adopts those factual findings in full and incorporates by reference the detailed statement of the case's background contained in the R&R. The summary that follows is drawn from the R&R.

N.S. is a student diagnosed with Attention Deficit Hyperactivity Disorder, executive functioning disorder, an anxiety disorder, and a mixed expressive and receptive language disorder. AR 7; R&R at 2. During the 2015–16 school year—the year at issue in this case—she was in the ninth grade. During the 2008–09 school year, N.S. attended a private school where she did not perform well. AR 61, 945–46. Her parents applied to DCPS to enroll her in the Lab School of Washington, a private school for students with learning disabilities, but DCPS did not respond to their application. N.S.'s parents eventually enrolled her in the Lab School and filed an administrative complaint against DCPS for failing to process her complaint in a timely manner, alleging that this resulted in denying N.S. a FAPE. AR 61; R&R at 2. On January 29, 2010, a hearing officer agreed with N.S.'s parents, and ordered DCPS to partially reimburse them for tuition at the Lab School, and to develop an appropriate IEP for N.S. R&R at 2. N.S. remained at the Lab School thereafter.

In March 2015, N.S.'s parents attended a meeting at DCPS to develop an IEP for N.S. for the 2015–16 school year. Three months later, N.S.'s parents received notice that N.S.'s IEP would be implemented at Woodrow Wilson Senior High School ("Wilson")—which meant that she would have to leave the Lab School. N.S.'s parents objected to this placement, and therefore again unilaterally placed N.S. in the Lab School for the 2015–16 school year and filed a due process complaint against DCPS, asserting a number of procedural and substantive claims. AR 3, 455–69; R&R at 3, 25–26.

The hearing officer held a two-day hearing before issuing his determination on February 4, 2016. He considered extensive evidence, including the parties' representations, the documentation from this and prior IEP meetings, and expert testimony regarding N.S.'s educational needs, all of which is summarized in the R&R. See id. at 3–21. Ultimately, he concluded that DCPS provided N.S. with an appropriate IEP, selected Wilson as an appropriate placement, and did not deny N.S.'s parents an opportunity to participate meaningfully in the development of N.S.'s IEP and in the school placement decision. Therefore, the hearing officer determined, N.S. was not denied a FAPE.

Plaintiffs challenged the HOD in this Court. See Compl. [ECF No. 1]. This Court referred the matter to Magistrate Judge Harvey for full case management. See Order, Mar. 15, 2016 [ECF No. 5]. Judge Harvey considered the parties' cross-motions for summary judgment and on January 31, 2017 issued a Report and Recommendation recommending that plaintiffs' motion be denied and defendant's be granted. See R&R at 59. He first considered DCPS's mootness argument: DCPS asserted that because plaintiffs challenged the IEP for the 2015–16 school year—which was already finished, and for which DCPS had already paid for N.S.'s education at the Lab School— the issue was moot. Id. at 26–27. Judge Harvey concluded that the case was not moot under the capable of repetition yet evading review doctrine. Id. (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). This doctrine is particularly applicable here, Judge Harvey concluded, where the parties continue to articulate "irreconcilable views" on certain aspects of N.S.'s IEP, making it extremely likely that the same dispute will arise in the future. Id. at 28–29.

Judge Harvey then explained that the IDEA requires a two-step inquiry when reviewing a FAPE: a court must ask, first, whether "the state [has] complied with the procedures set forth" in the IDEA in designing the IEP, and second, whether the IEP is "reasonably calculated to enable

4

the child to receive educational benefits." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206–07 (1982).  Applying this standard, Judge Harvey determined that the IEP and N.S.'s placement at Wilson met the requirements of the IDEA and provided N.S. with a FAPE.  Judge Harvey also determined that N.S.'s parents "were not denied access to the procedural safeguards that guarantee parents both an opportunity for meaningful input in all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'"  R&R at 55 (quoting Honig v. Doe, 484 U.S. 305, 311–12 (1988)).

After Judge Harvey issued the R&R, he placed the case in abeyance pending the Supreme Court's not-yet-issued decision in Endrew F.  See Order, Feb. 8, 2017 [ECF No. 29].  When Endrew F. was issued in March 2017, Judge Harvey reviewed it and determined that supplemental briefing was not necessary because Endrew F. did not require reconsideration of his conclusions in the R&R.  Plaintiffs then timely filed their objections to the R&R, asserting that Judge Harvey had applied to two issues legal standards that are incorrect after Endrew F.  See Pls.' Objections [ECF No. 34].  Defendant opposed plaintiffs' objections but did not assert any objections of its own to the R&R.  See Def.'s Opp'n [ECF No. 35].

Once the objections to the R&R were fully briefed, plaintiffs filed a motion for voluntary dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(2), which allows dismissal at the plaintiff's request if the court determines that doing so would be proper.  See Fed. R. Civ. P. 41(a)(2). In that motion, plaintiffs argue that the case is now moot—despite taking the opposite position in their earlier motion for summary judgment—because the 2015–16 school year has already passed and N.S. is enrolled "in another program" for the present school year.  See Pls.' Mot. for Voluntary Dismissal [ECF No. 37] at 1.  Notwithstanding its earlier view that the case was moot, defendant opposes the motion, arguing that plaintiffs' position is inconsistent with

5

Judge Harvey's determination that the case was not moot, such that plaintiffs are now estopped from asserting mootness. Def.'s Dismissal Opp'n at 3, 5–7. Defendant also argues that it would suffer legal prejudice if the case were dismissed. Id. at 9–10. For the reasons given below, the Court will grant plaintiffs' motion for voluntary dismissal and will dismiss this case with prejudice.

## LEGAL STANDARD

Federal Rule of Civil Procedure 41(a)(2) states that, except in circumstances not present here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Dismissal under the rule "is not a matter of right, but is discretionary . . . both as to whether a dismissal shall be allowed as well as to the terms and conditions to be imposed if allowed." Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 927 (7th Cir. 2007) (citation and internal quotation marks omitted); see Indep. Fed. Sav. Bank v. Bender, 230 F.R.D. 11, 13 (D.D.C. 2005). To determine whether dismissal is appropriate, a court looks to (1) whether the motion "was sought in good faith" and (2) whether the defendant "would suffer legal prejudice from a dismissal at this stage in the litigation." Indep. Fed. Sav. Bank, 230 F.R.D. at 13. "Because dismissal of claims against a defendant rarely prejudices that party, the grant of a voluntary dismissal is virtually automatic." Blue v. D.C. Pub. Sch., 764 F.3d 11, 19 (D.C. Cir. 2014).

## ANALYSIS

Plaintiffs argue that voluntary dismissal is warranted "in order to preserve judicial resources and because there is really no case or controversey [sic] remaining because of changing facts." Pls.' Reply to Def.'s Opp'n to Mot. for Dismissal ("Pls.' Dismissal Reply") [ECF No. 39] at 1. The former argument is not particularly strong: given the late stage at which plaintiffs filed their motion, judicial resources have already been expended and little would be saved by dismissing. (Indeed, the need for this decision is testimony to that fact.) The latter rationale,

meanwhile, boils down to an argument that the case is moot. This is exactly the opposite of plaintiffs' earlier position that the case was not moot.[1] However, plaintiffs are not alone in their flip-flopping. Despite arguing before Judge Harvey that the case was moot, DCPS now argues that the Court should reject plaintiffs' mootness claim under judicial estoppel or the law of the case doctrine, and that the Court should use its discretion under Rule 41(a) to deny plaintiffs' motion. Def.'s Dismissal Opp'n at 5–9.

This procedural do-si-do stems from a deeper disagreement over defendant's substantive rights in case of a dismissal. Defendant argues that, if the Court were to dismiss the case, plaintiffs would simply "file a new due process complaint under the IDEA and seek public funding for their new private placement" under the IDEA's stay-put provision. Id. at 9. DCPS could then be forced to pay for N.S.'s private-school education for another year while any administrative or judicial appeals take place—a liability that, defendant argues, it would not incur if the Court were to adopt Judge Harvey's R&R and declare the 2015–16 IEP (and Wilson in particular) to be N.S.'s "then-current educational placement." See id. at 7, 9–10. Plaintiffs, for their part, argue that this is a red herring. By dismissing the case, they say, the HOD becomes the final decision on the 2015–16 IEP, and the Hearing Officer's "finding that Wilson is appropriate becomes the new placement on record." Pls.' Dismissal Reply at 3. Therefore, N.S. would no longer have stay-put protection if her parents sought to challenge a later IEP; DCPS would not be responsible for paying for her education at a private school. See id.

---

[1] Plaintiffs point to only two "changing facts" to support their dismissal motion: (1) the fact that they have been seeking reimbursement for the 2015–16 school year, which has already passed and for which defendant already paid through the IDEA's stay-put provision; and (2) the parents' placement of N.S. "in another program" for the 2017–18 school year. Pls.' Mot. for Voluntary Dismissal at 1. The former fact was already true when plaintiffs argued that the case was not moot, and when Judge Harvey agreed with them. As for the latter, because Judge Harvey's mootness determination was premised on the likelihood that these parties would engage in similar litigation over future IEPs, N.S.'s new placement might not alter the capable of repetition but evading review analysis. See R&R at 27–29. However, it is relevant to the Rule 41(a)(2) dismissal analysis, as discussed below.

7

In attempting to resolve this dispute, the Court faces both a legal and a factual uncertainty. On the legal side, the D.C. Circuit has never defined what, exactly, constitutes legal prejudice for purposes of Rule 41(a)(2). It has stated that "the parameters of 'legal prejudice' are not absolutely clear," but that it "means 'something other than the necessity that [a] defendant might face of defending another action.'" Conafay v. Wyeth Labs. ("Conafay II"), 841 F.2d 417, 420 (D.C. Cir. 1988). This rule appears to be the law across the country. See 9 Charles Allen Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2364 n.20 (3d ed. Apr. 2017) (collecting cases).

Beyond this general principle, however, appellate courts have divided on what factors to consider when measuring prejudice. A majority of the circuits have adopted multi-factor tests similar to the one developed by the Seventh Circuit, which weighs: (1) the defendant's "effort and expense"; (2) "excessive delay and lack of diligence" by the plaintiff in "prosecuting the action"; (3) the plaintiff's explanation of "the need to take a dismissal"; and (4) "the fact that a motion for summary judgment has been filed by the defendant." Kovalic v. DEC Int'l, Inc., 855 F.2d 471, 474 (7th Cir. 1988) (quoting Pace v. S. Express Co., 409 F.2d 331, 334 (7th Cir. 1969)).[2] The Fifth, Ninth, and Eleventh Circuits, however, have rejected certain prongs of this test as insufficient to warrant denying a voluntary dismissal motion, instead focusing on whether the defendant would lose a legal claim or defense in future litigation. See Robles v. Atl. Sounding Co., 77 Fed. App'x 274, 275–76 (5th Cir. 2003) (unpublished); Westlands Water Dist. v. United

---

[2] See Doe v. Urohealth Sys., Inc., 216 F.3d 157, 160 (1st Cir. 2000); D'Alto v. Dahon Cal., Inc., 100 F.3d 281, 283 (2d Cir. 1996); Howard v. Inova Health Care Servs., 302 Fed. App'x 166, 178–79 (4th Cir. 2008) (unpublished); Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc., 583 F.3d 948, 953 (6th Cir. 2009); Donner v. Alcoa, Inc., 709 F.3d 694, 697 (8th Cir. 2013); Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996); see also Ferguson v. Eakle, 492 F.2d 26, 29 (3d Cir. 1974) (holding that [1] "financial prejudice requiring . . . the preparation and conduct of new discovery and proceedings," [2] "the emotional and psychological trauma associated with the experience of having been ready for trial in a federal court and then told that the proceedings would be started once again," and [3] "the non-financial prejudice reflected by the uncertainty over" defendants' legal rights together constituted prejudice).

States, 100 F.3d 94, 96–97 (9th Cir. 1996); Pontenberg v. Bos. Sci. Corp., 252 F.3d 1253, 1255–56, 1258–59 (11th Cir. 2001).

The D.C. Circuit appears to lean toward the more restrictive side of this divide. It has ruled that neither "los[ing] an opportunity for a favorable final disposition of the case," nor a plaintiff's weak explanation for the voluntary dismissal request, is grounds for denying a Rule 41(a)(2) motion if there is no prejudice to defendant's legal claims. Kellmer v. Raines, 674 F.3d 848, 852–53 (D.C. Cir. 2012) (alteration in original) (citation and internal quotation marks omitted). The D.C. Circuit has also stated that the granting of voluntary dismissal motions should be "virtually automatic." Blue, 764 F.3d at 19. However, in the absence of more specific guidance, several of the courts in this district have themselves adopted the Seventh Circuit's four-part test.[3] Moreover, several of the circuits that have not explicitly adopted that test—including the D.C. Circuit—have either suggested or held that a district court acts within its discretion in rejecting a Rule 41(a)(2) motion when the defendant had already filed a summary judgment motion before the plaintiff moved to dismiss.[4]

---

[3] See, e.g., Queen v. Schmidt, No. CV 10-2017 (PLF), 2016 WL 2757359, at *2 (D.D.C. May 12, 2016); Mittakarin v. InfoTran Sys., Inc., 279 F.R.D. 38, 41 (D.D.C. 2012); In re Fed. Nat. Mortg. Ass'n Sec., Derivative, ERISA Litig., 725 F. Supp. 2d 169, 176 (D.D.C. 2010), rev'd and remanded sub nom. Kellmer v. Raines, 674 F.3d 848 (D.C. Cir. 2012); In re Vitamins Antitrust Litig., 198 F.R.D. 296, 304 (D.D.C. 2000); Piedmont Resolution, LLC v. Johnston, Rivlin & Foley, 178 F.R.D. 328, 331 (D.D.C. 1998).

[4] See Estate of Ware v. Hosp. of the Univ. of Penn., —F.3d—, 2017 WL 4105935, at *10 (3d Cir. Sept. 18, 2017) (stating that "we have no doubt the District Court acted within its discretion" in denying a Rule 41(a)(2) motion when the defendant "would have faced the prospect of potentially relitigating, at some later date, claims it had put significant time and resources into defending and already litigated to the summary-judgment stage"); Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc. 903 F.2d 352, 360 (5th Cir. 1990) ("Where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal."); McBride v. JLG Indus., Inc., 189 Fed. App'x 876, 878 (11th Cir. 2006) (unpublished) (similar); Conafay II, 841 F.2d at 420 (suggesting that courts may deny voluntary dismissal motions if a "summary judgment motion had been pending when the voluntary dismissal request was made"); Conafay v. Wyeth Labs. (Conafay I), 793 F.2d 350, 352 (D.C. Cir. 1986) (same); see also Terrovona v. Kincheloe, 852 F.2d 424, 429 (9th Cir. 1988) ("[S]ince the magistrate had already issued his report and recommendation when the motion was filed, the district court's refusal to use its discretion to dismiss the petition under Fed. R. Civ. P. 41(a)(2) is reasonable."); see also Hayden v. Westfield Ins. Co., 586 Fed. App'x 835, 842 (3d Cir. 2014) (unpublished) ("Chief among the factors to consider in determining whether a defendant will suffer prejudice are the extent to which litigation has progressed and the extent to which the defendant will be exposed to new litigation in another forum." (emphasis added)); cf. In re Smith, 114 F.3d 1247, 1250 n.4 (D.C. Cir. 1997) (noting that "it would prejudice the government to

9

It may matter which legal prejudice test the Court applies. Under the four-part majority test, the Court would consider defendants' effort and expense in litigating this case for nineteen months; plaintiffs' promptness in prosecuting the case; the strength (or lack thereof) of plaintiffs' reasons for dismissing at this late juncture; and the fact that summary judgment motions have been pending for over a year and that Judge Harvey has already released an R&R. These factors—particularly the last—might well lean toward defendants' side. Under the more restrictive minority test, however, the calculus would look quite different. The fact that summary judgment motions were already pending when plaintiffs filed their voluntary dismissal motion might give the Court discretion to deny plaintiffs' motion. See Conafay II, 841 F.2d at 420. But the other factors just mentioned would become irrelevant. The D.C. Circuit's admonition that dismissal grants be "virtually automatic," Blue, 764 F.3d at 19—and the general rule that "[p]laintiffs are masters of their complaints," Webster v. Reprod. Health Servs., 492 U.S. 490, 512 (1989)—would lean strongly against a denial. The Court would thus have to resolve the parties' substantive dispute: if this case were to be dismissed, would DCPS be forced to pay N.S.'s private-school tuition under the stay-put provision during any future litigation? Because DCPS could lose a legal defense to any claim for stay-put funding, the answer to this question may well prove decisive in a legal prejudice inquiry.

This inquiry, however, leads to the second, factual uncertainty the Court faces. The parties litigate under the assumption that the school at which N.S.'s 2015–16 IEP should have been implemented would be N.S.'s "then-current educational placement," and would therefore determine any stay-put protection for this or future years. The IDEA does not define "educational

---

permit withdrawal of [a] claim after the government's brief was filed" on that claim, and citing Conafay II). But cf. Arias v. Cameron, 776 F.3d 1262, 1273 (11th Cir. 2015) ("[T]his circuit has declined to adopt a bright-line rule precluding a district court from granting a Rule 41(a)(2) voluntary dismissal without prejudice when a motion for summary judgment is pending.").

placement" for purposes of the stay-put provision, but courts in this Circuit have generally held that "the dispositive factor in deciding a child's 'current educational placement' should be the IEP . . . actually functioning when the 'stay put' is invoked." Wimbish v. District of Columbia, 153 F. Supp. 3d 4, 11 (D.D.C. 2015) (citation omitted). For instance, N.S. received stay-put funding at the Lab School for 2015–16 because that had been N.S.'s prior placement, and N.S.'s parents disagreed with DCPS's decision to move her to Wilson. Pls.' Dismissal Reply at 3; see Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S., 96 F.3d 78, 83 (3d Cir. 1996). In arguing over whether the resolution of the 2015–16 IEP matters for future litigation, however, the parties have not discussed the IEP developed for N.S.'s 2016–17 school year. It is undisputed that DCPS did develop an IEP for that year, and that plaintiffs had not filed a due process complaint to challenge that IEP as of January 2017. See D.C.'s Response to Pls.' Supp. Br. [ECF No. 25] at 8; Supp. Mem. in Support of Pls.' Mot. for Summ. J. [ECF No. 24] at 10. It is not clear, however, whether plaintiffs have challenged the 2016–17 IEP in the intervening months. Plaintiffs hint that they have, stating that "no other placement [besides the Lab School] has been agreed upon by the parties and no judicial process has been completed" since 2013. Pls.' Dismissal Reply at 3. But neither party has definitively clarified whether the 2016–17 IEP was implemented or challenged.

The answer to this factual question, like the answer to the standard-of-review question, could make a great difference to the outcome of the parties' dispute. "[W]hen a plaintiff has challenged the student's educational placement in place at the time the 'stay-put provision' is invoked, courts traditionally treat the IEP in place prior to the challenged IEP as the controlling IEP for purposes of the 'stay-put provision.'" G.B. v. District of Columbia, 78 F. Supp. 3d 109, 113 (D.D.C. 2015) (citation omitted). If plaintiffs accepted the 2016–17 IEP, then the question of N.S.'s educational placement for 2015–16 may be irrelevant in challenges to any future IEPs. If

plaintiffs were later to challenge, say, N.S.'s 2017–18 IEP, the 2016–17 IEP and its location of service might be controlling for stay-put purposes. On the other hand, if plaintiffs have challenged the 2016–17 IEP as well, and plaintiffs were to invoke stay-put protection before that dispute was resolved, then the parties could not rely on the 2016–17 IEP (because it would itself still be under challenge). They might have to look back to the 2015–16 IEP to determine whether DCPS needed to pay for N.S.'s future private schooling. If this were the case, DCPS could have a strong argument that dismissing instead of deciding this case could prejudice DCPS in future litigation.

Normally, Rule 41(a)(2) requests ask to dismiss cases without prejudice, thus allowing plaintiffs to refile the same case and re-raise the same issues. Under such circumstances, the quandaries just discussed would pose great difficulties. Happily, however, the Court need not resolve either the legal or the factual dispute today. This is because plaintiffs have requested that the Court dismiss this case with prejudice. See Mot. for Voluntary Dismissal. "Dismissal with prejudice 'operates as a rejection of the plaintiff's claims on the merits and [ultimately] precludes further litigation' of them." Belizan v. Hershon, 434 F.3d 579, 583 (D.C. Cir. 2006) (quoting Jaramillo v. Burkhart, 59 F.3d 78, 79 (8th Cir. 1995)). Dismissal would therefore give defendant what it desires: plaintiffs could no longer claim that the 2015−16 IEP violated the IDEA, or deny that that IEP (and Wilson) constitutes N.S.'s "then-current educational placement" for purposes of the stay-put provision.

Indeed, plaintiffs concede that dismissal would mean that "the Hearing Officer finding that Wilson is appropriate becomes the new placement on record," and that, "[b]y withdrawing N.S. from Lab and dismissing this appeal with prejudice, N.S. no longer has any stay-put protection." Pls.' Dismissal Reply at 3. This is in keeping with the decisions of several courts of appeals, including the D.C. Circuit, that the stay-put provision does not mandate public funding when

parents unilaterally remove their child from the then-controlling public placement and place the child in a private school while they challenge a proposed IEP. See N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ., 763 F.3d 611, 617 (6th Cir. 2014); Susquenita Sch. Dist., 96 F.3d at 83; Leonard by Leonard v. McKenzie, 869 F.2d 1558, 1564 & n.5 (D.C. Cir. 1989).[5] Given plaintiffs' concessions and the relevant case law, dismissing this case would work no legal prejudice against defendant under any of the standards outlined above. Hence, the Court will follow the default principle that Rule 41(a)(2) motions should be granted.[6]

## CONCLUSION

For the reasons explained above, the Court will grant plaintiffs' motion for voluntary dismissal and dismiss this case with prejudice. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: September 28, 2017

---

[5] The Sixth Circuit has said that, when a school district has sought to place a child in a school that she has never attended—as is the case with Wilson here—the student's "placement—for purposes of the stay-put provision—is the last agreed-upon school that [she] attended," rather than the school in the controlling IEP. N.W. ex rel. J.W., 763 F.3d at 618 (emphasis added). However, the courts in this circuit have not so held. See, e.g., Leonard by Leonard, 869 F.2d at 1564 (holding that plaintiffs could not be compensated under stay-put for keeping child in private school when educational placement had changed to public school the student never attended). And, in any case, here that placement would be the Lab School, not the school to which N.S.'s parents have now moved her. In future litigation, DCPS may rely on the preclusive effect of a dismissal with prejudice and on plaintiffs' concession that "withdrawing N.S. from Lab" means that "N.S. no longer has any stay-put protection." Pls.' Dismissal Reply at 3.

[6] Given this disposition of the 41(a)(2) question, defendant's judicial estoppel and law of the case arguments fall by the wayside. When examining judicial estoppel, at least three factors are relevant: (1) whether "a party's later position [is] 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001) (citations omitted). Plaintiffs' current position, while certainly an about-face from their position in front of Judge Harvey, is not "clearly inconsistent" in the sense required for judicial estoppel. It is possible for this case not to be moot at one time and for changing facts to make an appeal of the HOD no longer worth pursuing at a later time. Moreover, as discussed above, dismissing with prejudice based on this switch in position would neither advantage plaintiffs nor disadvantage defendant. As for law of the case, the D.C. Circuit has stated that "the doctrine 'is a prudential rule rather than a jurisdictional one,' motivated by a 'practical concern for judicial economy.'" United States ex rel. Dep't of Labor v. Ins. Co. of N. Am., 131 F.3d 1037, 1043 n.12 (D.C. Cir. 1997) (quoting Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739–40 (D.C. Cir. 1995)). Here, no judicial economy interest would be served by denying the voluntary dismissal motion in order to instead decide the case on the merits, when a dismissal with prejudice under the current factual circumstances would have the same effect.